IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ROBERT J. SIMMONS,
      Petitioner,

vs.                                     Case No.: 3:04cv436/RS/EMT

PAUL DECKER, Warden,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 1).  Respondent filed an answer and relevant portions of the state court record (Docs. 15, 17).  Petitioner filed a reply (Doc. 19).

The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

The procedural background of this case is undisputed by the parties.  Petitioner was charged by information with thirty-nine counts of burglary of an automobile, eleven counts of grand theft, twenty-three counts of petit theft, three counts of criminal mischief, one count of fraudulent use of a credit card, one count of forgery of a credit card receipt, eighteen counts of making a forged instrument, and eighteen counts of uttering a forged instrument (Doc. 15, Ex. A at 1–48).  On October 11, 2000, Petitioner entered a "straight up" plea of nolo contendere to the judge (*id.*, Exs.

B, C).  On December 7, 2000, the court sentenced Petitioner to a total sentence of eighteen years of incarceration (*id.*, Exs. D, E).[1]  Petitioner appealed his conviction and sentence to the Florida First District Court of Appeal (the "First DCA"), but subsequently Petitioner voluntarily dismissed the appeal (*id.*, Ex. E1).

On October 23, 2001, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure, asserting four claims of ineffective assistance of counsel and one claim of trial court error (*id.*, Ex. F at 111–44).  The trial court appointed counsel to represent Petitioner and held an evidentiary hearing on September 19, 2002 (*id.*, Ex. G).  On January 10, 2003, the court denied Petitioner's motion (*id.*, Ex. H).  Petitioner appealed to the First DCA and was represented by Edgar Lee Elzie on the appeal (*id.*, Exs. I, J).  On appeal, Petitioner presented only two issues: (1) that his trial counsel was ineffective for misrepresenting the length of the sentence he would receive; and (2) that his trial counsel was ineffective for failing to present mitigating testimony of two police officers and his family at the sentencing hearing (*id.*, Ex. J).  The First DCA affirmed per curiam without opinion on March 24, 2004, with the mandate issuing on April 12, 2004 (*id.*, Ex. J).  Simmons v. State, 871 So. 2d 214 (Fla. 1st DCA Mar. 24, 2004) (Table).

On May 25, 2004, Petitioner filed a petition for writ of habeas corpus in the First DCA, asserting that his appellate counsel (Elzie) was ineffective for failing to raise all grounds that were asserted (and rejected by the trial court) in Petitioner's Rule 3.850 motion (Doc. 15, Ex. K).  The First DCA denied the petition on July 20, 2004, and denied Petitioner's motion for rehearing on September 10, 2004 (*id.*, Ex. K).  Simmons v. State, 881 So. 2d 613 (Fla. 1st DCA July 20, 2004) (Table).

Petitioner filed the instant habeas action on December 6, 2004 (*see* Doc. 1 at 6).  He challenges his conviction on the following ineffective assistance of counsel grounds:

(1)      Counsel failed to move to suppress Petitioner's confessions;

(2)      Counsel misrepresented the length of the sentence Petitioner would receive;

---

[1]Petitioner received three consecutive five-year sentences on some counts, followed by a three-year sentence on other counts, for a total of eighteen years.  All other counts resulted in a sentence of "time-served" or a sentence that was to run concurrently with "all other sentences previously imposed" (*see* Doc. 15, Ex. D at 74-80).

> (3)    Counsel failed to present mitigating evidence during the sentencing hearing from Petitioner's family members and the detectives that obtained Petitioner's confessions

(*id.* at 4–5).

Respondent concedes that the petition is timely (Doc. 17 at 5) but argues that Petitioner failed to present his first federal claim to the state courts and is now procedurally barred from doing so (*id.* at 5–7, 12–13).  Petitioner agrees that his first claim was not exhausted in state courts, but he claims he can show good cause for his failure to exhaust (Doc. 1 at continuation pages 7–8). Additionally, Respondent argues that all of Petitioner's claims are without merit (*see* Doc. 17).

II.    STANDARD OF REVIEW

Section 2254(a) of Title 28 provides, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States."  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for federal habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218–19.

Section 2254 now provides:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> > (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (West Supp. 2001).

The United States Supreme Court explained the framework of review under § 2254(d)(1) in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test in habeas cases was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id., 529 U.S. at 412–13; Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).

The Eleventh Circuit has developed a three-step process for applying the Williams test to any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding.  See Wellington v. Moore, 314 F.3d 1256, 1260–61 (11th Cir. 2002); Robinson v. Moore, 300 F.3d 1320, 1343-45 (11th Cir. 2002).  First, the court must ascertain the controlling legal principles that are clearly established by the Supreme Court at the time of the state court adjudication.  Wellington, 314 F.3d at 1260; Robinson, 300 F.3d at 1343.  Second, the court must determine whether the state court adjudication was contrary to the clearly established Supreme Court law.  Wellington, 314 F.3d at 1260, Robinson, 300 F.3d at 1344.  "The 'contrary to' clause in § 2254(d)(1) 'suggests that the state court's decision must be substantially different' from the

---

[2]Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–375, 390–399, 120 S. Ct. at 1499–1503, 1511–1516); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–413, 120 S. Ct. at 1518–1523).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

relevant Supreme Court precedent." Wellington, 314 F.3d at 1260 (quoting Fugate v. Head, 261 F.3d 1206, 1216 (11th Cir. 2001), *cert. denied*, 535 U.S. 1104, 122 S. Ct. 2310, 152 L. Ed. 2d 1065 (2002) (quoting Williams, 529 U.S. at 405)). "Although a state court's decision that 'applies a rule that contradicts' the governing Supreme Court law is 'contrary,' a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law." Wellington, 314 F.3d at 1260 (citing and quoting Williams, 529 U.S. at 404–06). If the state court applied the correct Supreme Court precedent, and the United States Supreme Court, faced with materially indistinguishable facts, has not reached a decision different from the decision reached by the state court in the petitioner's case, the case does not fit within the "contrary to" clause, and the federal habeas court must proceed to the third step and determine whether the state court "unreasonably applied the relevant Supreme Court authority." Fugate, 261 F.3d at 1216. Likewise, if the facts of the Supreme Court cases and the petitioner's case are not substantially similar, "a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law." *Id.* (citing and quoting Williams, 529 U.S. at 406). A state court is not required to cite Supreme Court cases or even be aware of the cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002).

The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 410. The Supreme Court has explained that "a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" Bell v. Cone, 535 U.S. 685, 122 S. Ct. 1843, 1850, 152 L. Ed. 2d 914 (2002) (quoting Williams, 529 U.S. at 411). Indeed, "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 123 S. Ct. 1166, 1175, 155 L. Ed. 2d 144 (2003). A state court's incorrect application of clearly established law will be held to be reasonable and not warrant a writ unless "thorough analysis by

a federal court produces a firm conviction that [the state court] judgment is infected by constitutional error." Williams, 529 U.S. at 389. "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." Yarborough v. Alvarado, 541 U.S. 652, 124 S. Ct. 2140, 2149, 158 L. Ed. 2d 938 (2004) (citation omitted). Although § 2254(d)(1) is concerned only with federal law as clearly established by the Supreme Court, this court may look to circuit precedent to demonstrate reasonable applications of Supreme Court precedent. Van Poyck v. Fla. Dep't of Corrections, 290 F.3d 1318, 1322 n.4 (11th Cir. 2002).

In deciding whether a state court decision involved "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" under § 2254(d)(2), determinations of fact are "presumed to be correct," unless the presumption is rebutted by Petitioner "by clear and convincing evidence." Section 2254(e)(1); see Miller-El v. Cockrell, 537 U.S. 322, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).") (dictum); Fugate, 261 F.3d at 1215 (quoting 28 U.S.C. § 2254(e)(1)); Parker v. Head, 244 F.3d 831, 835-36 (11th Cir. 2001) (citing § 2254(d)(2) and (e)(1)); see also Crawford v. Head, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides a "highly deferential standard of review" of the state court's factual determinations). Thus, not only must the state court's factual determination have been unreasonable, but the court's factual findings must be shown unreasonable by clear and convincing evidence. See Callahan v. Campbell, 427 F.3d 897, 926 (11th Cir. 2005) (citing § 2254(e)(1); Rutherford v. Crosby, 385 F.3d 1300, 1308 (11th Cir. 2004) ("[Petitioner] has not shown by clear and convincing evidence that the Florida Supreme Court's factual finding . . . [wa]s unreasonable in light of the evidence in the state court record.")).

III.    EXHAUSTION AND DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[3] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78. Specifically, in order to fully exhaust an issue, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." Boerckel, 526 U.S. at 845, 119 S.Ct. at 1732. Florida law requires either an appeal of each issue, or where a motion for post-conviction relief is appropriate, the filing of such a motion and an appeal therefrom. Leonard v. Wainwright, 601 F.2d 807, 808 (5th Cir. 1979) (citations omitted). Failure to exhaust is proper grounds for dismissal of a federal habeas petition. Keeney v. Tamayo-Reyes, 504 U.S. 1, 10, 112 S. Ct. 1715, 1720, 118 L. Ed. 2d 318 (1992).

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, or procedurally barred from federal review. Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999). When non-exhaustion is asserted by the respondent, the burden is upon the petitioner to come forward with documentation demonstrating that the instant claims have been exhausted. See Darr v. Burford, 339

---

[3]Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
　　　　(A)  the applicant has exhausted the remedies available in the courts of the State; or
　　　　(B) (i)  there is an absence of available State corrective process; or
　　　　　　(ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

U.S. 200, 218–19, 70 S. Ct. 587, 597–98, 94 L. Ed. 761 (1950), *overruled in part on other grounds by* Fay v. Noia, 372 U.S. 391, 83 S. Ct. 822, 9 L. Ed. 2d 837 (1963) (recognizing petitioner's burden to demonstrate the exhaustion of state remedies); *see also* Hannah v. Conley, 49 F.3d 1193, 1196 n.4 (6th Cir. 1995); Mallory v. Smith, 27 F.3d 991, 994 (4th Cir. 1994) (citing cases).

A petitioner an overcome a procedural default in two narrow circumstances.  The petitioner must either show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim.  Henderson v. Haley, 353 F.3d 880, 892 (11th Cir. 2003); Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)).  Lack of counsel or ignorance of available procedures is not enough to establish cause.  Tower, 7 F.3d at 210.  Furthermore, the Eleventh Circuit has held that because there is no constitutional right to an attorney in state post-conviction proceedings, any ineffectiveness of post-conviction counsel cannot be "considered cause for the purposes of excusing . . . procedural default that occur[s] . . . at the state collateral post-conviction level."  Henderson, 353 F.3d at 892 (citing 28. U.S.C. § 2254(i); Coleman v. Thompson, 501 U.S. 722, 752 (1991); In re Magwood, 113 F.3d 1544, 1551 (11th Cir. 1997)); Johnson v. Singletary, 938 F.2d 1166, 1174–75 (11th Cir. 1991)).  To establish prejudice, a petitioner must show that there is "at least a reasonable probability that the result of the proceeding would have been different."  *Id.*

Alternatively, to satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  Schlup, 513 U.S. at 327.  Further,

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

       Within this framework, the court will review Petitioner's claims.

IV.    PETITIONER'S CLAIMS

       A.    <u>Ground one: Petitioner was denied effective assistance of counsel, because counsel failed to move to suppress Petitioner's confessions</u>

(Doc. 1 at 4).  Petitioner alleges that his counsel was ineffective for failing to move to suppress Petitioner's confessions (*id.*).  Petitioner states that he told his trial counsel that on the date of his arrest, he was questioned by two officers, who threatened him after he told them that he had nothing to say (*id.* at 4 and continuation page 1).  Petitioner "broke down" and informed the detectives that he was "geeked up" and had been continuously smoking crack cocaine for over two weeks, that he was addicted to crack cocaine, and that he had not slept prior to his arrest (*id.* at continuation page 1).  One of the detectives told Petitioner that he needed to get treatment to deal with his drug abuse problem and that if Petitioner cooperated with the detectives, they would help him get sentenced to a residential substance abuse treatment program and probation (*id.* at continuation pages 1–2).  The detectives further stated that they knew all of the judges in Escambia County, and the judge would go along with the detectives' sentencing recommendation (*id.* at continuation page 2).  Petitioner alleges that he told his trial counsel that at that point he agreed to cooperate "from being under duress from the detectives [sic] threats, promises of 'help' and the lack of sleep," and that during the recording of the confessions, the detectives turned the tape recorder off and on several times (*id.*).  At a later time, one of the detectives came to the jail and asked Petitioner to confess to additional crimes, and the detective promised to "help" Petitioner in exchange for the confessions (*id.* at continuation pages 2–3).  After Petitioner told his trial counsel all of these facts, his counsel told Petitioner that there was nothing counsel could do and that Petitioner should not have made any statements to the detectives (*id.* at continuation page 3).

       Respondent argues that Petitioner failed to present this claim to the state courts and is now procedurally barred from doing so (Doc. 17 at 5–7, 12–13).  Petitioner agrees that his first claim was not exhausted in state courts (Doc. 1 at continuation page 7).  Indeed, upon review of the record, Petitioner raised this claim in his Rule 3.850 motion (*see* Doc. 15, Ex. F at 116–20), but Petitioner did not appeal the trial court's denial of this claim to the First DCA (*see id.*, Ex. J).  Thus, it is clear

that Petitioner did not exhaust this claim.  O'Sullivan, 526 U.S. at 845 (citing 28 U.S.C. § 2254(c));

Leonard, 601 F.2d at 808.

As discussed *supra*, failure to exhaust is proper grounds for dismissal of a federal habeas

petition.  Keeney, 504 U.S. at 10.  To overcome his failure to exhaust, Petitioner must either show

cause and prejudice or a fundamental miscarriage of justice.  Henderson, 353 F.3d at 892.  Petitioner

claims he can show good cause for his failure to exhaust (Doc. 1 at continuation page 7).  Petitioner

contends that his appellate counsel refused to include this claim on appeal, even after Petitioner

wrote him a letter asking that counsel appeal every claim presented in Petitioner's 3.850 motion

(*id.*).  Therefore, Petitioner argues that it is the fault of his appellate counsel that his claim was not

appealed (*id.*).  Petitioner also asserts prejudice arising from his appellate counsel's failure to appeal

the issue: one, Petitioner lost his right to appeal the lower tribunal's erroneous ruling; two, Petitioner

lost his right to challenge the effectiveness of his trial counsel's representation; and three, Petitioner

involuntarily defaulted this claim in the state court (*id.* at continuation page 8).

Regarding cause, as the Eleventh Circuit held in Henderson, any ineffectiveness of post-

conviction counsel cannot be "considered cause for the purposes of excusing . . . procedural default

that occur[s] . . . at the state collateral post-conviction level."  353 F.3d at 892.  The only "cause"

asserted by Petitioner is that his appellate counsel failed to appeal this issue to the First DCA.

Because Petitioner did not have a federal constitutional right to appellate counsel in state post-

conviction proceedings, this "cause" is insufficient to overcome the procedural default.[4]

Moreover, even if Petitioner could establish cause, he has not established prejudice, because

he has not demonstrated "at least a reasonable probability that the result of the proceeding would

have been different."  Henderson, 353 F.3d at 982.  Although Petitioner states that he lost the right

to appeal this issue, Petitioner has not shown that the First DCA would have granted his

postconviction motion on this issue.  Finally, Petitioner has not shown that he qualifies under the

miscarriage of justice exception.  Therefore, as Petitioner cannot show either cause and prejudice

---

[4]Petitioner cites Jones v. State, 642 So. 2d 121 (Fla. 5th DCA 1994) for the proposition that once counsel is
appointed to represent a prisoner, the prisoner is entitled to effective assistance of counsel.  Nonetheless, for purposes
of federal habeas review, Petitioner does not have a federal constitutional right to appellate counsel in state post-
conviction proceedings.  Coleman, 501 U.S. at 752.

or miscarriage of justice, his first ineffective assistance of counsel claim is procedurally barred from federal habeas review.

B.   Ground two: Petitioner was denied effective assistance of counsel, because counsel misrepresented the length of the sentence Petitioner would serve for entering the plea

(Doc. 1 at 4).  Petitioner contends that approximately one week before he entered a plea, his trial counsel told him that if he pled "straight up" to the judge, he would not serve more than a five-year prison sentence and a drug treatment program, but if Petitioner went to trial on his cases and was found guilty, he would serve numerous life sentences (*id.* at 4 and continuation page 8).  Petitioner states that his counsel "then advised the Petitioner that he should answer the Judge's questions 'Yes sir' and 'No sir' when the Judge asked if counsel or anyone indicated a specific sentence for entering his plea and if anyone had promised him anything or threatened him to enter the plea" (*id.* at continuation page 8).  Based on his counsel's representations that he would not serve more than a five-year prison sentence, Petitioner agreed to enter a "straight up" plea (*id.*).

1.   Clearly Established Supreme Court Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  To obtain relief under Strickland, a petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  466 U.S. at 687–88.  "The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one."  Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  If a petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  Strickland, 466 U.S. at 697.  Thus, this court need not address the prejudice prong if the court determines that the performance prong is not satisfied.  Turner v. Crosby, 339 F.3d 1247, 1279 (11th Cir. 2003), *cert. denied*, 541 U.S. 1034, 124 S. Ct. 2104, 158 L. Ed. 2d 718 (2004); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the

performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted).

> Trying cases is no exact science.  And as a result, we must never delude ourselves that the fair review of a trial lawyer's judgment and performance is an activity that calls for great precision or for a categorical approach.  When reviewing whether an attorney is ineffective, courts "should always presume strongly that counsel's performance was reasonable and adequate."  Atkins v. Singletary, 965 F. 2d 952, 958 (11th Cir. 1992).  And, "a court should be highly deferential to those choices . . . that are arguably dictated by a reasonable trial strategy."  Devier v. Zant, 3 F. 3d 1445, 1450 (11th Cir. 1993).  Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it can be shown that no reasonable lawyer, in the circumstances would have done so.

Rogers v. Zant, 13 F. 3d 384, 386 (11th Cir. 1994); Grayson v. Thompson, 257 F.3d 1194, 1216 (11th Cir. 2001) (to show counsel's performance was unreasonable, defendant must establish that no competent counsel would have taken the action that his counsel did take); Chandler, 218 F.3d at 1313 (issue is not what is possible, prudent, or appropriate, but what is constitutionally compelled) (citing Burger v. Kemp, 483 U.S. 776, 107 S. Ct. 3114, 3126, 97 L. Ed. 2d 638 (1987)).

However, not every strategic decision passes constitutional muster.  Whether a particular decision by counsel was a tactical one is a question of fact, Hardwick v. Crosby, 320 F.3d 1127, 1163 (11th Cir. 2003), and the state court's resolution of that issue enjoys a strong presumption of correctness.  See 28 U.S.C. § 2254(e)(1); Jackson v. Herring, 42 F.3d 1350, 1367 (11th Cir. 1995); Horton v. Zant, 941 F.2d 1449, 1462 (11th Cir. 1991). Whether a particular tactical decision was a reasonable one, however, is a question of law, Hardwick 320 F.3d at 1163; Jackson, 42 F.3d at 1367; Horton, 941 F.2d at 1462.  In determining whether counsel's decision was reasonable, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689.

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high.  Wellington, 314 F.3d at 1260.  The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'"  Id. (quoting Strickland, 466 U.S. at 693).  However, the Court has also clarified that

a petitioner need not demonstrate it 'more likely than not, or prove by a preponderance of evidence,' that counsel's errors affected the outcome.  <u>Strickland</u>, 466 U.S. at 693–94.  Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694.  Indeed, it would be "contrary to" the law clearly established in <u>Strickland</u> for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence.  <u>Williams v. Taylor</u>, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncrasies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. <u>Strickland</u>, 466 U.S. at 694–95.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id.* at 695.

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.  Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways.  Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect.  Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.  Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors. . . . [T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.

*Id.* at 695–96.

An ineffective assistance of counsel claim may be used to attack the entry of a plea on grounds that the plea was not voluntarily and intelligently made because counsel did not provide Petitioner with "reasonably competent advice."  <u>Cuyler v. Sullivan</u>, 446  U.S. 335, 344, 100 S. Ct. 1708, 1716, 64 L. Ed. 2d 333 (1980) (quoting <u>McMann v. Richardson</u>,  397 U.S. 759, 770, 90 S. Ct. 1441, 1448, 25 L. Ed. 2d 763 (1970)).  In a plea situation, counsel must provide advice "within the range of competence demanded of attorneys in criminal cases."  <u>Hill v. Lockhart</u>, 474 U.S. 52,

56–57, 106 S. Ct. 366, 369, 88 L. Ed. 2d 203 (1985) (quoting McMann, 397 U.S. at 771, 90 S. Ct. at 1449)).   Under this standard, representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused.   Stano v. Dugger, 921 F.2d 1125, 1150–51 (11th Cir. 1991).   Absent such blatant errors, however, the court should "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." Yordan v. Dugger, 909 F.2d 474, 477 (11th Cir. 1990).

To meet the prejudice prong of the Strickland standard in a plea situation, Petitioner must prove that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial.   Hill, 474 U.S. at 59, 106 S. Ct. 370.   Often this analysis hinges upon whether eradication of the error would have led counsel to change his recommendation as to the plea, which in turn generally depends on whether the outcome of a trial would have been substantively different.   Id. at 59–60, 106 S. Ct. at 370–71.   While counsel can be deemed ineffective under Strickland for failing to provide proper advice during the plea process, Petitioner must come forth with objective evidence to show that but for counsel's errors he would not have accepted the plea offer, and would have insisted on going to trial.   See Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991); Toro v. Fairman, 940 F.2d 1065, 1068 (7th Cir. 1991). Conclusory, after-the-fact statements that Petitioner would not have pled guilty do not meet this requirement, nor is it sufficient to say that Petitioner would have received a less harsh sentence had he not accepted the plea offer.   See Diaz, 930 F.2d at 835; see also Johnson v. Duckworth, 793 F.2d 898, 902 n.3 (7th Cir. 1986).

2.       Federal Review of State Court Decision

Petitioner contends that he was denied effective assistance of counsel because his trial counsel misrepresented the length of the sentence Petitioner would serve if he entered a plea (Doc. 1 at 4).   Specifically, Petitioner argues that based on his counsel's representations that he would not serve more than a five-year prison sentence, Petitioner agreed to enter a plea "straight up" to the judge (id. at continuation page 8).   Petitioner raised this claim in his Rule 3.850 motion (Doc. 15, Ex. F at 127–29).   The court considered the record, including the transcript from Petitioner's plea colloquy, and held an evidentiary hearing on the claim.

The record reflects that on October 10, 2000, the day before Petitioner entered his plea, Petitioner signed a plea agreement (*id.*, Ex. C).  According to the signed agreement, Petitioner was to plead straight up to all counts as charged (*id.*, Ex. C at 1, attach. A).  The agreement contains one section on sentencing:

> I understand that the maximum period of imprisonment and fines, as well as any mandatory minimums that apply, with regard to the charges to which I am entering my plea are as indicated on page 1 of this agreement and paragraph 16 below and any applicable attachments.  I have reviewed the sentencing guidelines applicable to the cases to which I am entering a plea.

(*id.*, Ex. C at 2).  Attached to the agreement is a list of the counts to which Petitioner was to plead, as well as the maximum sentence and fine for each count (*id.*, Ex. C, attach. A).  Also attached is an agreement to make restitution in the amount of $11,889.59 (*id.*, Ex. C, attach. B).  Petitioner initialed each page of the agreement and signed the agreement at the end (*id.*, Ex. C).

On October 11, 2000, the trial judge questioned Petitioner about the signed plea agreement (*id.*, Ex. B).  Petitioner testified under oath that he read and signed the plea agreement, that he understood it fully, that he understood all of the rights he was waiving and that those rights were explained on pages one and two of the plea agreement, that he was being charged with a number of offenses (mostly third degree felonies and some misdemeanors), that the court would defer sentencing, that he faced a state prison sentence if he entered a plea, that it was his own free decision to enter a plea, and that he was satisfied with the advice and assistance of his attorney Killam (*id.*, Ex. B at 2–4).  Further, Petitioner testified that nobody had made a prediction about the sentence he would receive:

> THE COURT: All right.  Has anybody made any prediction, either Mr. Killam or anybody else that should you enter a plea, you are going to receive a certain sentence from this Court?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: So you are doing this simply on your own - -
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: - - behalf without any other person influencing that decision to enter a plea?

THE DEFENDANT: Yes, sir.

(*id.*, Ex. B at 4).  The court accepted Petitioner's plea of nolo contendere and deferred sentencing (*id.*, Ex. B at 4–5).

Twice during Petitioner's plea hearing, and against the advice of his trial counsel (*see id.*, Ex. G at 4), Petitioner made requests of the judge.  First, when the judge asked Petitioner if it was his own free decision to enter a plea, Petitioner responded "Yes, sir, but at the time, I was strung out on dope, and I just wonder if I could get any kind of treatment" (*id.*, Ex. B at 3).  The judge responded that he would order a presentence report, look into Petitioner's background, and then decide on an appropriate sentence (*id.*, Ex. B at 3).  Second, after the judge accepted Petitioner's plea, Petitioner asked the judge to lower his $180,000.00 bond so Petitioner could "get out and work" (*id.*, Ex. B at 5).  The judge reduced Petitioner's bond to $15,000.00 (*id.*, Ex. B at 5).

On December 7, 2000, the judge held a sentencing hearing and sentenced Petitioner to a total of eighteen years incarceration but waived the imposition of any restitution costs (*id.*, Ex. D at 13).  Petitioner's punishment scoresheet reveals that, based on Petitioner's prior record and the number of offenses he was then charged with, the lowest permissible prison sentence was 155.4 months (*id.*, Ex. C1 at 2).

At the evidentiary hearing held on Petitioner's Rule 3.850 motion, Petitioner testified that Killam told Petitioner (and Petitioner's family) that if Petitioner pled to the judge, he would not get more than "five years with drug treatment," and that all of Petitioner's sentences would be concurrent (*id.*, Ex. G at 7, 8).  According to Petitioner, Killam also stated that if Petitioner went to trial, he "could get numerous life sentences" (*id.*, Ex. G at 7, 10).  Petitioner testified that before he signed the plea agreement, he told Killam that he could not read and write, but Killam responded that most of the agreement did not apply to Petitioner and the sentences would be concurrent (*id.*, Ex. G at 8, 11, 12).  Killam told Petitioner to sign the agreement, so Petitioner did (*id.*, Ex. G at 8).  When Petitioner signed the agreement, he could not read it, and Killam did not read it to him (*id.*, Ex. G at 9).  Petitioner testified that the only thing Killam told him about the sentences was that a third-degree felony carries five years, but Killam did not tell him that he could get consecutive

sentences, did not discuss the sentencing guidelines with Petitioner, and did not inform Petitioner of the minimum required permissible sentence under the sentencing guidelines (*id.*, Ex. G at 9).  Petitioner stated that he did not see the scoresheet until after he was sentenced (*id.*, Ex. G at 12).  However, Petitioner admitted on cross-examination that he could understand numbers and that he had seen the list of counts and sentences attached to the plea agreement (*id.*, Ex. G at 28).

Additionally, Petitioner testified that Killam advised him when to say "yes" and "no" when Petitioner went before the judge to enter his plea (*id.*, Ex. G at 13).  Thus, when he entered his plea, Petitioner did not know he could receive a long prison term and did not ask the judge to clarify the possible prison term, because Killam had advised him that if he answered the judge's questions and did "not make the judge mad" he would "get nothing but five years" (*id.*, Ex. G at 27–28).  Petitioner stated that he just "did what [his] attorney told [him] to do" (*id.*, Ex. G at 29).  However, Petitioner admitted that he did go against his attorney's advice when he asked the judge to reduce his bond:

> THE COURT: . . . Now, Mr. Simmons, when you came in to court to enter your plea - -
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: - - you were already dissatisfied with the way Mr. Killam was handling your case?
>
> THE DEFENDANT: Yes, sir.  I wrote Jack Behr a letter, and he never would let me get him off my case.
>
> . . . .
>
> THE COURT: So even though you're dissatisfied with the way he's handling your case - -
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: - - you just relied on what he told you without getting some clarification from the Court?
>
> THE DEFENDANT: Well, he scared me.  He scared me when he said I'd get numerous life sentences if I went to trial.
>
> THE COURT: And then after we go through the plea colloquy and I'm trying to find out what your state of mind is, I said, "Well, has anybody made any prediction, either Mr. Killam or anybody else, that should you enter a plea, you're going to receive a certain sentence from this Court?"

THE DEFENDANT: He told me to answer it.

THE COURT: And he told you to answer it no?

THE DEFENDANT: He explained all of that to me before we even went in there.

THE COURT: Right.  So on that situation, you followed what your attorney said?

THE DEFENDANT: Yes, sir.

THE COURT: But later on when your attorney told you not to bring up the business about getting out on a bond, you went ahead and asked the Court - -

THE DEFENDANT: I asked you, yeah.

THE COURT: Yeah.  Asked me to give you a bond and I did.

THE DEFENDANT: Yes, sir.

THE COURT: But you went against your attorney there, but earlier, you didn't go against your attorney when I asked you the question about should you enter a plea, had Mr. Killam made a prediction on the kind of sentence you're going to receive?

THE DEFENDANT: The reason I asked you for the bond is because that day, I talked to my wife on the phone.  They was fixing to get kicked out.  They had no food.  And I told Mr. Killam all of this and he said, well we're in here for a plea today [sic].  And I just wanted - - you know, stood up and asked you if I could speak and you said yes and that's when I asked you.

THE COURT: So after you go against your attorney and I grant the bond, you still didn't feel like you should ask the Court exactly what kind of state prison sentence you're going to receive, even though you're dissatisfied with the services of your attorney and you're not happy with the way he's handling your case?

THE DEFENDANT: Yes, sir. . . .

(*id.*, Ex. G at 30–32).

Petitioner's wife testified at the evidentiary hearing that it was her "understanding" that Petitioner was going to plead guilty and the maximum sentence would be five years (*id.*, Ex. G at 60–61).  Further, she testified that Petitioner is not illiterate, though there are some words he cannot understand, and she agreed that Petitioner can "pick up and read the newspaper and things like that" (*id.*, Ex. G at 62–63).

Killam, Petitioner's trial counsel, testified at the evidentiary hearing that he was "sure" that he explained the statutory maximums and the scoresheet range to Petitioner and

that Petitioner had experience with the legal system because he had been prosecuted in the past (*id.*, Ex. G at 71, 72).  Regarding the minimum possible sentence, Killam testified that Petitioner knew that, absent a departure, he would be sentenced to at least thirteen years (*id.*, Ex. G at 79).  However, Killam did not remember telling Petitioner the minimum, could not say for sure that Petitioner received a copy of the scoresheet, and did not remember discussing with Petitioner whether there could be consecutive sentences (*id.*, Ex. G at 79–80, 84).  The judge questioned Killam regarding these issues:

> THE COURT: Now, you say you don't have any specific recollection about going over the guideline range with him.  Mr. Simmons has testified that in discussing his plea option, that you told him that he should plead because he faced the prospect of a maximum - - possible maximum sentence of life imprisonment, which is consistent with 440 years that the guidelines call for.  So in light of his testimony, does that in any way refresh your recollection of conversations with him?

> MR. KILLAM: All I can tell the Court is that when I go over a sentencing document like the plea agreement in this case, which is basically an advisement of his rights formally . . . the scoresheet is always something that I go over. . . .

> THE COURT: Now, Mr. Simmons has specifically alleged that the reason he entered this plea is because you told him and assured him that he was going to get a sentence of no more than five years in state prison.  Did you ever make that statement or give him that assurance?

> MR. KILLAM: Your honor, I would not make an assurance of something that I had no control over, and I would not have told him that.

> THE COURT: Likewise, Mrs. Simmons, his wife, said that she had a conversation with you the morning of docket day outside of the courtroom, at which time she tried to learn a little bit more about the imminent plea proceedings. . . .

> . . . .

> THE COURT: Again, she says that she came away with the impression that you assured her that Mr. Simmons would receive, if he pled, a five-year state prison sentence.

> MR. KILLAM: I don't remember giving her that impression, and I wouldn't have, based on the circumstances

(*id.*, Ex. G at 88–90).

Finally, Killam testified that he did not tell Petitioner to lie to the court during the plea colloquy or to, "no matter what the Court said, to just answer the questions dishonestly just to answer them, and whatever it took to get through the colloquy, to tell the Court what

it wanted to hear" (*id.*, Ex. G at 69).  Killam further testified that he did not advise Petitioner what to answer when the judge asked questions during the plea colloquy (*id.*, Ex. G at 69–70).

       In its order denying relief, the Rule 3.850 court found that Petitioner's counsel was not ineffective.  In so doing, the court made a credibility determination, finding the testimony of Killam more credible than that of Petitioner (*id.*, Ex. H at 2–4).  First, the court accepted the testimony of Killam that he "would not make an assurance of something he did not have control over, and counsel would not have told [Petitioner] that [Petitioner] would spend no more than 5 years in state prison" (*id.*, Ex. H at 3).  Next, it found that Killam's advice did not result in Petitioner's plea being involuntary (*see id.*, Ex. H at 3–4).  The court stated that ordinarily the trial court should determine that a defendant understands any mandatory minimum and maximum possible penalties (*id.*, Ex. H at 3 (citing Fla. R. Crim. P. 3.172(a), -(c)(1)).  However, in this case, Petitioner was represented by counsel and entered a plea straight up "by way of a signed plea agreement" (*id.*, Ex. H at 3–4).  Therefore, the trial court questioned Petitioner regarding his understanding of signing the plea agreement, and Petitioner indicated that he had read and understood the information contained in the plea agreement (*id.*, Ex. H at 4).  Finally, the court found that Petitioner did in fact read and understand the plea agreement (*see id.*, Ex. H at 4).  Petitioner told the trial court, under oath, that he had read and understood the plea agreement, but Petitioner testified at the evidentiary hearing that he was illiterate and that he had followed Killam's advice to answer the trial court's questions untruthfully (*id.*, Ex. H at 4).  Although the Rule 3.850 court acknowledged that a defendant might follow his counsel's directions under some circumstances, the court noted that Petitioner disregarded his counsel's advice at two other times, by asking for a bond and asking about drug treatment (*id.*, Ex. H at 4).  Therefore, the court did not accept Petitioner's testimony that he lied to the trial court when he said he did not read and understand the plea agreement (*see id.*, Ex. H at 4).  The court concluded that Petitioner was not entitled to relief on this ineffective assistance of counsel claim (*id.*, Ex. H at 3).

In its decision, the Rule 3.850 court applied <u>Strickland</u> (*id.*, Ex. H at 1–2). Therefore, the court applied the correct legal rule based on Supreme Court precedent. Furthermore, this court defers to the trial court's factual findings, as Petitioner has not shown by clear and convincing evidence that the findings were unreasonable. *See* 28 U.S.C. §§ 2254(d)(2), -(e)(1); <u>Callahan v. Campbell</u>, 427 F.3d 897, 926 (11th Cir. 2005) ("[Section] 2254(d)(2) allows for relief where the state court adjudication 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' § 2254(d)(2). Not only must the factual determination have been unreasonable, but the state court's factual findings must be shown unreasonable by clear and convincing evidence."). Additionally, the Supreme Court has determined that "the representations of the defendant . . . [at a plea proceeding] as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." <u>Blackledge v. Allison</u>, 431 U.S. 63, 73–74, 97 S.Ct. 1621, 1629, 52 L. Ed. 2d 136 (1977). Thus, Petitioner's statements under oath at his sentencing are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise. *Id.* The remaining question is whether the trial court's finding, that counsel's performance was not so irresponsible as to constitute ineffective assistance of counsel, was an unreasonable application of the performance prong of <u>Strickland</u>.

The record supports the trial court's finding that Killam's performance was not so deficient as to constitute ineffective assistance of counsel. As noted by the trial court, Petitioner testified under oath during the plea colloquy that he had read and understood the plea agreement that he signed. The plea agreement includes an attachment that lists the offenses and the maximum penalty for each offense, a paragraph stating that Petitioner understands the maximum and minimum penalties, and an acknowledgment that Petitioner had reviewed the sentencing guidelines (*see* Doc. 15, Ex. C). Furthermore, the trial court found that Petitioner's counsel had not advised him that he would receive only five years if he pled "straight up." Moreover, Petitioner admitted that he understood the maximum

possible penalty, because he testified during the evidentiary hearing that Killam advised him he was facing "multiple life sentences" (Doc. 15, Ex. G at 7, 8).

In light of the state court record and the Rule 3.850 court's factual findings, this court cannot conclude that the Rule 3.850 court's legal conclusion—that Killam's performance was not so deficient as to constitute ineffective assistance of counsel—was contrary to or an unreasonable application of Supreme Court law.[5]

C.   Ground three: Petitioner was denied effective assistance of counsel, because counsel failed to present mitigating evidence at Petitioner's sentencing

(Doc. 1 at 5).   Petitioner asserts that he told his trial counsel that he wanted the two detectives who obtained Petitioner's confession to speak on his behalf at his sentencing (*id.* at continuation page 10).   The detectives would have testified that Petitioner cooperated by confessing to several offenses and also would have testified to Petitioner's addiction to crack cocaine (*id.* at continuation page 11).   Petitioner's counsel informed him that the detectives would only lie and that the judge would only sentence Petitioner to five years (*id.* at continuation page 10).   Further, Petitioner states that on the day of his sentencing, he told his counsel that various family members were present to speak on his behalf (*id.*).   Petitioner states that these family members would have testified to Petitioner's character prior to his crack cocaine addiction, his employment history, responsibility to his wife and children, family financial hardship, and "other things" (*id.* at continuation page 11).   However, Petitioner's counsel replied that it would be a waste of the court's time and the judge would only sentence Petitioner to five years (*id.* at continuation page 9).

1.   Clearly Established Supreme Court Law

The Strickland standard for ineffective assistance of counsel is set forth *supra*.

2.   Federal Review of State Court Decision

---

[5]Although the court does not need to reach the prejudice prong of Strickland, the court notes that even if Killam's performance were deficient, Petitioner cannot show that his case was prejudiced in any way.  Petitioner had ample opportunity to tell the judge during the plea colloquy that he did not understand the plea agreement or the possible sentence.  Indeed, at two other times during the plea hearing, Petitioner felt comfortable telling the judge about his drug problem and asking for a bond reduction.  However, instead of telling the judge that he was illiterate or that he was expecting a sentence of five years, Petitioner indicated to the court that he understood the plea agreement and that nobody had predicted the sentence that Petitioner would receive.

Petitioner raised this claim in his Rule 3.850 motion (Doc. 15, Ex. F at 132–34).  The court considered the record, including the transcript from Petitioner's sentencing hearing, and held an evidentiary hearing on the claim.

The sentencing hearing transcript shows that Killam argued for a downward departure from the guidelines based on Petitioner's drug problem, his willingness to pay restitution, and his cooperation with the police (*id.*, Ex. D at 3–4).  Killam requested a sentence that would provide Petitioner an opportunity to attend a rehabilitation program (*id.*, Ex. D at 3).  Additionally, the state acknowledged Petitioner's cooperation with the police and his drug addiction (*id.*, Ex. D at 4–5; *see also id.*, Ex. G at 18).  The state argued for a sentence of rehabilitation as well as incarceration and indicated that the victims predominately were not "as interested in getting restitution as . . . seeing [Petitioner] sentenced to a period of incarceration (*id.*, Ex. D at 6).  The judge considered all of these factors, as well as the wishes of the victims, before sentencing Petitioner (*id.*, Ex. D at 6).

At the evidentiary hearing, Petitioner stated that he asked Killam if the detectives and his family members could speak for him, and Killam replied that it would be a waste of the court's time (*id.*, Ex. G at 13).  However, Petitioner could not identify any additional testimony that the officers could have provided other than the fact that Petitioner had cooperated, which was already conceded by the state at the sentencing hearing (*id.*, Ex. G at 18–19).  Further, Petitioner repeatedly claimed he did not know what his family members might have said on his behalf if they had testified at his sentencing hearing (*id.*, Ex. G at 21–24).  Killam testified that he did not recall whether Petitioner had asked to have witnesses testify at his sentencing hearing (*id.*, Ex. G at 72).

Both interrogating officers testified at the evidentiary hearing, and both stated that they would have testified at the sentencing hearing that Petitioner cooperated with their investigation (*id.*, Ex. G at 37, 46).  Additionally, both officers stated that they would not have testified to anything other than what the state conceded at Petitioner's sentencing hearing (*id.*, Ex. G at 37–38, 37).  Petitioner's wife testified at the evidentiary hearing that Petitioner is "just like any other guy, husband out there.  He has his good points and his bad

points.  But . . . what I would have said that day is I think justice would have been better served if he got drug counseling and he had to pay it back" (*id.*, Ex. G at 63).

In its order denying relief, the Rule 3.850 court found that Petitioner requested that his family members and the interrogating officers speak at the sentencing hearing to tell the court about Petitioner's drug use, ability and desire to pay restitution, and Petitioner's cooperation with the police (*id.*, Ex. G at 5).  However, the court found that Petitioner was not prejudiced by Killam's omission, because the court was already aware of all of the mitigating factors, so additional testimony would have been repetitive (*id.*, Ex. G at 5).

As above, the Rule 3.850 court applied <u>Strickland</u> in its decision (Doc. 15 at 1–2), and Petitioner has not shown by clear and convincing evidence that the court's factual findings were unreasonable.  Furthermore, in light of the state court record, this court cannot conclude that the trial court's finding, that Petitioner's case was not prejudiced by counsel's performance, was an unreasonable application of <u>Strickland</u>.  It is clear from the record that testimony from Petitioner's wife or the interrogating officers at Petitioner's sentencing hearing would have been repetitive and unnecessary.  The state conceded that Petitioner had cooperated with the police; both sides emphasized Petitioner's drug problem; and Killam told the court that Petitioner was willing to make restitution.  The judge considered all of these factors before sentencing Petitioner.  Therefore, Petitioner has not demonstrated any reasonable possibility that the judge would have sentenced him to less time if the witnesses had testified, and Petitioner's claim is subject to dismissal.

Accordingly it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

At Pensacola this <u>9</u><sup>th</sup> day of November 2006.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only</u>.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**